[Civ. No. 8222. First Appellate District, Division Two.—August 26, 1932.]

L. F. BONNEY et al., Respondents, v. GEORGE M. PETTY, Appellant.

William Ellis Lady for Appellant.

Evans, Pearce & Campbell and William H. Campbell for Respondents.

BURROUGHS, J., *pro tem.*—This action was brought for the specific performance of a contract to convey real property. The court found that the defendant George M. Petty, the vendor named in said contract, could not specifically per-

form and in lieu thereof awarded the plaintiffs damages in the sum of $7,500, and the additional sum of $500, paid to said defendant in pursuance of the terms of the contract. The action was upon motion for a nonsuit dismissed as to the other defendants. The defendant Petty has appealed. He brought the record to this court under the alternative method.

The first error upon which the appeal is predicated is the claim that neither the original nor the amended complaint states facts sufficient to constitute a cause of action. ■ As the original complaint has been superseded by the amended one, it is unnecessary to give further consideration to the former. (21 Cal. Jur., p. 213, sec. 146.) This rule applies even where, as in the instant case, the amended complaint is made to conform to the proof. (*Dieckmann* v. *Merkh,* 20 Cal. App. 655, 658 [130 Pac. 27].) ■ There has been no demurrer filed to either complaint, and our consideration is therefore confined to the sole question as to the sufficiency of the amended pleading to state a cause of action, which question may be raised at any stage of the case.

■ It is claimed by the appellant that the complaint is fatally defective because in an action for the specific performance of a contract the plaintiff should allege that the contract is fair, just and reasonable as to him. There can be no doubt but that such contention is true. The amended complaint does allege, however, ''that the said sum of five thousand and no/100ths ($5,000) was an adequate, just, fair, and reasonable consideration for said property''. Section 3391 of the Civil Code provides that the specific performance of a contract cannot be enforced against a party thereto: ''1. If he had not received an adequate consideration for the contract; 2. If it is not, as to him, just and reasonable.'' In *Andersen* v. *Charles,* 52 Cal. App. 290 [198 Pac. 641], it is held that it is necessary in this character of action that the complaint allege facts showing that the contract is just and reasonable as to the defendant and that the consideration received for the contract is adequate, and an allegation in terms to such effect is but the statement of a conclusion. (See, also, 23 Cal. Jur., p. 495, sec. 53; *Salisbury* v. *Yawger,* 184 Cal. 783 [195 Pac. 682]; *Miller* v. *Gusta,* 103 Cal. App. 32 [283 Pac. 946].) If at this point we were foreclosed of further inquiry into this ques-

tion, under the last-mentioned decisions, we would be compelled to order a reversal of this case upon that ground, but in the case of *Baker* v. *Miller,* 190 Cal. 263 [212 Pac. 11, 12], it is said concerning a state of pleadings similar to the one here under consideration: "The only averment in that connection is that 'at or about the date of the contract the estate of said deceased was of the appraised value of $22,753, and said contract was in all respects just and fair and liberal in its provisions in favor of said defendant'. Aside from the statement of the value of the estate, there is not here any attempt to state facts at all—nothing more than the general language of the statute, which amounts to a mere conclusion of law without facts to support it. (*Joyce* v. *Tomasini,* 168 Cal. 234, 237 [142 Pac. 67] ; *Stiles* v. *Cain,* 134 Cal. 170, 172 [66 Pac. 231].) If it be contended that the statement of facts in the complaint, including the contract, set out in exact words, together with an allegation of the appraised valuation of the estate, constitute an inferential averment not amounting to an absolute want of facts, the cases relied upon to support the complaint are not in point. They merely hold that if 'no demurrer is interposed, the pleading will be held good after judgment.' (*Estate of Behrens,* 130 Cal. 416, 418 [62 Pac. 603, 604].) Viewed as a whole, we feel there is no escape from the conclusion that the complaint is insufficient and the general demurrer interposed by the defendant should have been sustained." However, after reciting the facts of that case the court concluded that, "The case presented is one which falls squarely within the constitutional inhibition that no judgment shall be set aside for any error as to any matter of pleading, unless after an examination of the entire case, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." Although in the case at bar, under the above authorities, the amended complaint is defective, the evidence hereinafter set forth shows that the contract is, as to the defendant, just and reasonable and sustained by an adequate consideration and the court has so found. After judgment the amended complaint is sufficient to sustain the action. ▇ Objection is also made that the amended complaint is insufficient because it does not allege the value of the property either at the time the contract

was made or at the time of its alleged breach. The said complaint does allege the value of the property at the time of the making of the contract as $5,000, and the damage suffered by the plaintiff at the time the contract was breached, as $15,000. This statement, we believe, in the absence of a demurrer inferentially states its value. But we believe that the cause having gone to judgment falls within the rule laid down in *Baker* v. *Miller, supra.* ■ It is also claimed that there is a failure to allege bad faith; but taking the entire amended complaint as a whole, it sets forth facts from which bad faith may be inferred. Facts are alleged which show full compliance on the part of plaintiffs, defendant's cancellation of the escrow, and his immediate sale of the property to a third person, thus putting it beyond his power to perform. We think these allegations are sufficient to state a cause of action in that behalf, especially as the evidence is sufficient and there are proper findings of fact.

Objection is also made that material findings and conclusions of law fail to support the judgment. These we will consider after the examination of the evidence.

There is substantial evidence to support the following facts, many of them being uncontradicted: On December 14, 1928, the plaintiffs, as buyers, and defendant Petty, as seller, entered into an agreement whereby the plaintiffs agreed to buy and the defendant agreed to sell a certain lot in the county of Los Angeles for the sum of $5,000. The terms of the contract were evidenced by an escrow agreement deposited with the First National Bank of Lawnsdale as the escrow-holder. Plaintiffs had paid by check outside of escrow $500 of the purchase price which was acknowledged in the agreement; $3,000 by check at the time of the execution of the agreement, and under its terms $1500 was to be paid into escrow on or before January 2, 1929; the balance of the $5,000 was to be used for commissions, and other expenses and was not to be paid into the escrow. The defendant Petty was to deposit in the escrow a deed of the property to be delivered to plaintiffs after recordation, upon their payment into the escrow the sum of $4,250; such sum being the total due after deducting the $500 paid out of escrow and a commission of $250. This deed was deposited in escrow within the time limit required. It is provided

in the escrow agreement that the holder is the agent of both parties. Under the buyers' agreement it is provided that the buyers give authority to the escrow-holder to use all funds deposited by them to carry out the instructions provided that "on or before January 14, 1929, instruments have been filed for record entitling you to procure assurance of title in the form of a guarantee of title issued by California Title Insurance Company . . . " The foregoing instructions were accepted and approved in their entirety by the seller. The evidence further shows that on Saturday, December 29, 1928, J. C. Wright, one of the parties to the agreement and a respondent herein, deposited with the escrow a check for $1511, to pay the balance due, the $11 to pay the escrow charges. This last-named check was drawn on the Huntington Park Bank, a branch bank of the Security First National Trust and Savings Bank at Seventh and Spring Streets in Los Angeles. On Monday, December 31, 1928, the Lawnsdale Bank, the escrow-holder, sent this check with others in a cash letter to the above-mentioned Security First National Trust and Savings Bank above referred to, where it was credited to the account of the Lawnsdale Bank and forwarded to the Huntington Park Bank. The account of J. C. Wright, the maker of the check, amounted to between seven and eight hundred dollars in the last-named bank and when the check reached it, the officials telephoned the home of J. C. Wright, and Wright being away from home his wife directed the insertion at the head of the check—7th and Spring—the head office of the Huntington Bank where Wright had a checking account of about $10,000. This was done and the check was returned to the Seventh and Spring Street bank and received on January 4, 1929.

The escrow bank never knew of this error which occurred through Mr. Wright having checks of both banks in his pocket and inadvertently using the wrong one, nor was the escrow at any time after December 29, 1928, without credit for the full amount due Petty. The Bank of Lawnsdale had credit for the check on January 2d and at all times thereafter. That credit was never changed and the funds were there available to their use. The Lawnsdale Bank credited the money to the *escrow* but made the distinction that it was not credited to the seller and could not

be credited until certain instruments should have been filed for record and certificates returned; and, by the terms of the agreement of escrow, the bank as holder of the escrow had until January 14th in which to perform these acts and complete the escrow. The buyer had paid and the funds had been properly credited and before the limit of time in which to complete the escrow had expired the seller withdrew his papers and refused to complete his contract. On January 4, 1929, the appellant Petty called at the Lawnsdale Bank and inquired if the money was there for him but was told that there had been no report on the check and it was suggested that he call next day. He was also advised by the said bank that they had not recorded the deed nor received the certificate of title. Petty left the bank and returned later with a written notice signed by him canceling the escrow.

After demand on Petty to fulfill the terms of the escrow, the plaintiffs commenced this action on January 8, 1929, for the specific performance of the contract or damages in case the first-named relief could not be granted. The case came on regularly for trial March 12, 1929, and on the following day it developed that defendant Petty had sold the property involved an hour before this action was filed, to his attorney, W. E. Lady, for the sum of $7,500 with the understanding between them that after Lady had received from oil profits from said land the amount of the purchase price, Petty and Lady would then divide any further profits between them. The complaint was thereupon amended and Lady together with another party was brought into the case. The evidence further discloses that for some time prior to the date of the execution of the escrow agreement the property in controversy and the land in that vicinity was being prospected for oil; that considerable excitement had prevailed; that the Standard and other large oil concerns were interested; that, at 3 o'clock on the morning of the day the escrow herein was entered into, a well not far distant from this land had actually developed oil, although according to the evidence, neither party knew at the time of such development. There was testimony that at the time of the making of the contract the fair market value of the land was from $4,500 to $5,000 which was a fair price irrespective of the oil strike near by. From the date of the escrow

until January 4, 1929, when the defendant Petty gave notice of cancellation the price continued to increase until on the last-named date the market value was fixed by witnesses as being between $12,500 and $17,500. The court found that at the date of the agreement the market value was $5,000 and when breached it had a market value of $12,500. The court also found that defendant Petty acted in bad faith. We think the court's finding is justified by the evidence that, without waiting for a report or return on the check, without waiting until January 14, 1929, for the recordation of the deed and, without waiting for the receipt of the certificate of title, as he had agreed to do, he attempted to cancel the escrow, and had then sold the property in such a manner as to prevent the enforcement of the agreement and to still retain, for all practical purposes, one-half of the income of the property. In any event this was a question of fact to be determined by the court. It is true that some of this evidence is disputed but it was for the trial court to determine the conflict and having done so its findings thereon may not be disturbed by us.

It appears from the foregoing that the consideration for the contract was adequate; that as to the defendant it was just and reasonable; and that the defendant acted in bad faith. In such cases the proper measure of damages is fixed by section 3306 of the Civil Code as follows: ''The detriment caused by the breach of an agreement to convey an estate in real property, is deemed to be the price paid, and the expenses properly incurred in examining the title and preparing the necessary papers, with interest thereon; but adding thereto, in case of bad faith, the difference between the price agreed to be paid and the value of the estate agreed to be conveyed, at the time of the breach, . . . '' (*Hansen* v. *Hevener,* 69 Cal. App. 337 [231 Pac. 361].) This rule was followed in the present case. The plaintiff was allowed such detriment plus the $500 paid to defendant Petty out of the escrow and which he still retains.

A review of the entire record including all of the evidence satisfies us that there has not been a miscarriage of justice. (Art. VI, sec. 4½, Const.) The judgment should be affirmed and it is so ordered.

Spence, Acting P. J., and Sturtevant, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on September 24, 1932, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on October 24, 1932.

Shenk, J., dissented.