[Civ. No. 7828. Second Appellate District, Division One.—March 28, 1934.]

FLOYD B. SMITH, Respondent, v. HUDSON B. SABIN, Appellant.

Paul Nourse, Harold Jones and Forrest A. Betts for Appellant.

L. A. West and G. P. Adams for Respondent.

HOUSER, J.—Defendant appeals from a judgment that was rendered against him pursuant to a verdict which was returned by a jury in an action for damages that arose from personal injuries sustained by plaintiff at a time when he was struck by an automobile owned and operated by defendant.

In his opening brief appellant makes the statement that the only issue presented on the appeal is whether "the court erred in refusing to declare a mistrial and to discharge the jury after plaintiff on direct examination was asked to testify, and did testify, about an alleged conversation with defendant regarding insurance". In that regard two asserted separate references to the assumed fact that defendant was protected by a contract or policy of insurance from the payment of any damages for which he might become liable in the matter, form the basis for the contention by appellant that, in the absence of such references, a verdict of the jury might have been returned in favor of defendant. The first of such alleged acts of so-called misconduct on the part of plaintiff occurred in the course of the *"voir dire"* examination by plaintiff's attorney of the prospective jurors called into the jury-box, preparatory to a conclusion as to whether they would be acceptable to him to act as jurors on the trial of the action. In the course of such examination, the following question was asked:

"Are any of you stockholders in any bonding company? Or are any of you employed, or any of your immediate relatives employed, in any bonding company?"

It is not contended by appellant that, standing alone, the asking of either or both of such questions constituted prejudicial error. To the contrary, it is admitted that in the

circumstances, especially under the decision announced in
the case of *Arnold* v. *California P. C. Co.*, 41 Cal. App. 420
[183 Pac. 171], the questions asked were not properly sub-
ject to adverse criticism. To the same effect see: *William-
son* v. *Hardy*, 47 Cal. App. 377 [190 Pac. 646]; *Nichols* v.
*Nelson*, 80 Cal. App. 590 [252 Pac. 739]; *Dougherty* v.
*Ellingson*, 97 Cal. App. 87 [275 Pac. 456]; *Hasty* v. *Tre-
villian*, 102 Cal. App. 405 [283 Pac. 148]; *Dermer* v. *Pis-
toresi*, 109 Cal. App. 310 [293 Pac. 78].

The second alleged violation of the rights of defendant
in the premises occurred in the following circumstances:
Prior to the date of the trial of the action, at a time when
the deposition of plaintiff was being taken, in response
to a question asked him regarding a conversation which
theretofore had taken place between him and defendant,
plaintiff replied: " . . . He said he was sorry, of course,
that he had done it and he said he had insurance to take
care of it. I said, 'How much insurance do you have?'
And he told me Ten Thousand Dollars. I told him that
I was glad he had insurance, and outside of that we was
talking more in a general way about business." Whereupon
counsel there representing defendant made a statement to
the effect that any reference to insurance was "incompe-
tent, irrelevant and immaterial" and that he would "ask
the court to have it stricken out". To which the attorney
who then and there represented plaintiff remarked: "Of
course, that is a matter to be determined by the court at
that time if you make any objection to it". On the trial
of the action no part of said deposition was introduced in
evidence. By each of three separate affidavits which were
introduced on the hearing of a motion for a new trial
herein, it appears that between the time when the deposition
was taken and the time when plaintiff was placed on the
witness-stand on the trial of the action he was instructed
by each of his attorneys in substance "that any conversa-
tion between him and the defendant with respect to insur-
ance would not be competent evidence, and that when he
was asked as to how the accident occurred and the other
matters to be touched upon by him in his testimony, he
must omit saying anything about the insurance, and the
plaintiff promised his counsel that he would heed said
advice; . . . ". However, on the trial of the action, in
the course of the testimony given by plaintiff, particularly

with reference to the conversation regarding which theretofore he had testified in his deposition, the following occurred:

"Q. Well, did you have any talk about this accident? A. I had a little talk about the accident. Q. Just tell us what was said now with respect to the accident—*not anything else but the accident?* . . . A. He said he didn't see me. Q. Anything else? That was about all, *except the insurance.* We talked about that. Q. Never mind about that. Mr. Read (attorney for defendant): If the Court please, I am going to assign that as error, and I ask the court to instruct the jury to disregard it. The Court: Oh, yes. Mr. West (attorney for plaintiff): We consent to it and join in the request. The Court: Yes; the jury is instructed to disregard that matter."

In addition to the timely instruction thus given by the court to the jury to "disregard that matter", the jury was later instructed that:

"You must not consider for any purpose any evidence offered and rejected, or which has been stricken out by the court; such evidence is to be treated as though you had never heard it."

Notwithstanding the several decisions to which attention has been directed regarding the right of counsel in proper circumstances to inquire of prospective jurors as to their possible connection with liability insurance companies, in effect it is contended by appellant that in the examination of such jurors in the instant action the inquiry as to whether any of them were "stockholders in any bonding company", or whether they or any of their "immediate relatives" were employed by a bonding company, together with the facts relative to the incident hereinbefore set forth wherein, as an outcome of such circumstances, in answer to a question as to whether "anything else" had been said, plaintiff replied that that was about all, except that they talked about "the insurance",—constituted error which injuriously affected the substantial rights of defendant. In that connection, appellant has cited several authorities in each of which it is held that prejudicial error results where it appears that a question has been asked in "bad faith", and for the purpose of informing the jury that the liability of the defendant in the premises is protected by a contract or policy of insurance. (*Squires* v. *Riffe,* 211 Cal. 370 [295 Pac.

517]; *Citti* v. *Bava*, 204 Cal. 136 [266 Pac. 954], and authorities therein respectively cited.) But since, in the premises, it is evident that the real source of the injury (if any) to defendant arose from the knowledge on the part of the jury of the assumed ultimate fact that the insurance company, and not the defendant, might be compelled to bear the burden that might result from any judgment that might be rendered in favor of plaintiff, the assumed additional element of "bad faith" on the part of either the plaintiff or his attorney in introducing evidence on the trial of the action relative to the liability of an insurance company in the matter is of a negligible character and necessarily is of secondary importance in arriving at a determination of the probable effect of the questioned evidence. However, without reviewing the material facts in the instant action connected with the final statement made by the witness to the effect that he had talked about "the insurance", this court is of the opinion that no "bad faith" was shown by plaintiff, or either of his attorneys. To the contrary, with the exception of the single remark made by one of such attorneys at the time when the deposition of plaintiff was taken, their acts and general conduct point to the conclusion that they were conscientious in their endeavor to prevent their client from making any statement in his testimony with reference to the fact that defendant had said anything that would indicate that his liability, if any, for damages caused by his assumed negligence was covered by a policy or contract of insurance. We are then remitted to the remaining and primary question of whether, in the particular circumstances of this case, defendant may be said to have been so prejudicially affected by ·the statement of plaintiff that he and defendant talked about "the insurance", that because thereof the judgment should be reversed and a new trial ordered. On consideration of the significance which might attach to the statement that they talked about "the insurance", the impression is practically instantaneous that the effect was harmless. The words are so indefinite that, in the absence of some explanation to the jurors of the meaning that was intended to be conveyed, and without knowledge on their part of the testimony that was given by plaintiff at the time his deposition was taken, however gifted with intelligence a juror might be, his conclusion as to what meaning should be ascribed

to the statement would necessarily depend upon the extent to which an imagination might carry. In other words, it would be nothing other than surmise; mere guesswork. For example, the testimony given by plaintiff on the trial of the action very readily might indicate that either the plaintiff, or the defendant, or that both of them, either carried, or that he or they did not carry, insurance of some kind, for either some definite or some indefinite purpose. It may or might have been that life insurance, fire insurance, accident insurance, or liability insurance was the subject of their conversation. It may or might have been that such conversation developed the fact that plaintiff carried some sort of insurance and that defendant did not do so. It may or might have been that the conversation disclosed the fact that neither of them carried insurance of any kind, and that in view of the happening of the accident in question, the parties were simply considering the advisability of providing against the possibility of financial loss that might ensue to one of them in the future from accident, fire or personal injury. As far as the jury was concerned, up to the time when the criticised words were spoken, the only fact or circumstance that had any tendency to connect the word "insurance" with a contract of that nature by which defendant was assumed to be protected against his civil liability for damages occasioned by his negligent operation of the automobile were the two questions asked of the jury as a whole on their "voir dire" examination relative to whether any one of them was, or "any of his immediate relatives" were employed "in any bonding company". Of course, it is possible, but most unlikely, that some very elert, quick-thinking juror may have observed the connection between the two incidents. It would seem much more probable that had counsel for defendant remained silent and made no objection to the statements by the witness, any possible connection of the criticised testimony with the incidents that occurred on the "voir dire" examination of the jurors would not have been noted.

It also will be remembered that, in addition to instructing the jury at a time immediately following the making of the statement by the witness, the court later instructed the jury more fully in regard to its duty in the premises. The presumption is that the jury followed the instructions that were given in that regard.

Counsel for appellant is the more insistent upon the soundness of his contention because of his expressed opinion that the evidence offered by plaintiff was evenly balanced by that introduced in behalf of defendant; and consequently that error, considered however slight or insignificant in ordinary circumstances, in the instant situation would have been sufficient to turn the scale against his client. Without herein setting forth a *résumé* of the evidence, suffice it to say that as disclosed by the "cold record", this court is unable to agree with appellant that the evidence produced by the respective parties is evenly balanced one side with the other. To our collective mind, the evidence as a whole, including the inferences deducible therefrom, preponderated in favor of plaintiff. From the fact that the trial court denied defendant's motion for a new trial, it becomes evident that the trial judge was not favorable to appellant's contention in that regard.

In the case of *McPhee* v. *Lavin*, 183 Cal. 264, 269 [191 Pac. 23, 25], the pertinent facts were similar to those in the instant case. It was there said:

"The errors of law assigned upon admission of testimony over defendant's objections and motions to strike so far as in any way suggestive of prejudice, arise upon the admission in evidence, as part of a conversation had with defendant, of defendant's declaration to plaintiff immediately after the collision that he carried accident insurance that would provide for plaintiff if he had suffered injury. As this was admitted as tending to show an acknowledgment of responsibility by defendant for the accident, we think it was proper evidence."

But, in any event, considering the premises, the alleged error was of such slight importance that it did not result in a miscarriage of justice. (Sec. 4½, art. VI, Const.)

It is ordered that the judgment be and it is affirmed.

Conrey, P. J., and York, J., concurred.