[Civ. No. 12517. First Dist., Div. One. Oct. 23, 1944.]

MRS. SAUL ADES, Respondent, v. EDMUND S. BRUSH et al., Appellants.

Keesling, Wayland & Eliot, Keesling, Wayland & Keil, Beverly & Wayland and Charles R. Wayland for Appellants.

Walter McGovern and Julian D. Brewer for Respondent.

PETERS, P. J.—On the dark, rainy afternoon of January 6, 1941, at about 5:30 p. m., on the 19th Avenue Park Presidio By-Pass near Fulton Street in San Francisco, an automobile driven by Mildred C. George, and in which plaintiff Mrs. Saul Ades was riding as a guest, collided with an automobile owned by defendant Loop Lumber Company and being then driven with the consent of the company by defendant Edmund S. Brush, who was, on that date, an officer of the corporate defendant and working for it. As a result of the collision, Mrs. Ades received personal injuries for which she brought this action against both defendants. The case was tried before a jury. The jury awarded plaintiff $7,500. On motion for a

new trial the trial court ordered the amount reduced to $5,000 as a condition of denying the motion. The plaintiff consented to the reduction, and judgment was entered for the reduced amount. From this judgment defendants appeal on a bill of exceptions.

The scene of the accident should be described. Fulton Street is a main street in San Francisco and runs east and west. Park-Presidio Drive is a wide highway, crossing Fulton Street at right angles and running generally north and south. Just south of Fulton Street, the 19th Avenue By-Pass and the 13th Avenue Drive come together to form the Park Presidio Drive. The 19th Avenue By-Pass runs in a general southwesterly direction from Fulton Street, while the 13th Avenue Drive runs generally in a southeasterly direction. Of these two highways the 19th Avenue By-Pass is the wider and more important street. It is divided down the middle with a parkway, and on each side of the parkway has lanes for three lines of traffic, each side of the highway being 30 feet wide. The 13th Avenue Drive is divided down the center with a white line and is 35 or 36 feet wide. The two highways, as they proceed northerly towards Fulton Street, come together at an angle somewhat less than a right angle. Where the two streets come together the parkway on the 19th Avenue By-Pass ends, and there are dividing lines in the street to separate northerly and southerly traffic. Thus, the 19th Avenue By-Pass and the 13th Avenue Drive come together in the form of a Y. The throat of the Y, at its narrowest part, is 65 feet wide, and where the two arms first come together, it is much wider. The stem of the Y is quite short before it reaches Fulton Street.

On the day in question Mrs. Ades had visited Mrs. George at the latter's home in Burlingame. Mrs. George, late in the afternoon, agreed to drive Mrs. Ades to her home in San Francisco in an automobile owned by herself and by her husband. Mrs. Ades seated herself at the driver's right. There were no other occupants in the car. It was raining. The George car ultimately arrived on the 19th Avenue By-Pass going in a northerly direction. Mrs. George was driving next to the parkway in the extreme left lane for northerly traffic. About 70 feet southerly of the Fulton Street intersection the George car came to a stop because of traffic ahead. This point is in the throat of the Y formed by the coming together of the 19th Avenue By-Pass and the 13th Avenue Drive.

In the meantime, Brush was operating his car on the 13th Avenue Drive in a northwesterly direction. Upon reaching the junction of the two streets, Brush traversed the first and second lanes of traffic and drove into the third, or most westerly lane of traffic. In doing so, he collided with the right front of the George car at something less than at a right angle.

As a result of the collision, plaintiff fell and hit her head on the windshield and roof of the car. She remained in a semi-conscious condition for two days and was confined to her bed for at least seven weeks. She suffered a concussion and possible contusions of the brain tissue. She had pains in her ear and a tapping noise. Her nose was injured, and she will eventually need an operation on it. She also suffered a traumatic neurosis.

Six witnesses testified as to the facts and circumstances surrounding the accident. Plaintiff, Mrs. George and Police Officer Hirrel testified for plaintiff, while Brush, Monfort Julian and Oliver Rea were called by defendants.

Mrs. George testified that she was intending to turn left at Fulton Street; that she was proceeding down the 19th Avenue By-Pass close to the parkway and then proceeded within a foot of the double white line; that as she approached Fulton Street she was in a line of traffic in the extreme left lane; that several cars ahead of her stopped and she came to a stop; that it was then raining quite hard; that both windshield wipers were working and the window to her left was half down; that when the other cars ahead started to move she started up at a "crawl"; that she had just started up when from her right she saw a bright light, and the crash occurred; that it was a very hard, a "terrible" impact that threw her car a distance of three feet to the left and across the white line; that Brush's car hit the right front fender of her car with the front of his car; that she could not estimate the speed of Brush's car but it hit her car "awful hard"; that Brush's lights were almost at right angles to her car; that after the accident his car was at a right angle to her car. She designated on a diagram how the cars collided and indicated that at the time of the impact the Brush car was headed west and approximately at a right angle to her car. The force of the impact threw plaintiff forward and upward causing her to hit the roof and windshield with her head. The windshield was broken by the impact.

Plaintiff's testimony adds nothing to that of Mrs. George. Her recollection of the circumstances of the accident was not as clear as that of Mrs. George, but, on the whole, is corroborative of that testimony.

Officer Hirrel testified that at the time of the collision, which occurred between 5:30 and 5:45 p. m., he was standing on the southeast corner of the Fulton and 19th Avenue By-Pass intersection directing traffic; that he saw the two cars collide approximately as indicated by Mrs. George except that the Brush car was on more of an angle than indicated by her; that Mrs. George was approaching him directly, and the Brush car was "crossing my line of vision"; that Brush apparently traversed the first and second lanes of traffic and was attempting to get into the third when the collision occurred; that both cars were traveling at about 10 miles an hour when first observed; that defendant told him he had stopped prior to the accident; that he had "no idea why. the Brush car got over in the extreme lane there, instead of remaining in the right-hand lane he was in when I first saw him"; that the noise of the impact made "quite a crash."

Defendant Brush and his witnesses testified as to a different set of facts, it being their story that the Brush car was stopped at the time of impact and that the George car made a wide turn and ran into it. They placed the George car in the second lane of traffic.

Appellants urge that the evidence fails to disclose any substantial evidence of negligence on the part of Brush. The contention hardly deserves serious consideration. Disregarding conflicts in the evidence, and indulging in all reasonable inferences in favor of respondent, as we must, the jury was justified in finding that while Mrs. George was proceeding carefully and properly in the left lane of traffic following automobiles immediately in front of her, Brush came from the extreme right lane, into the center lane and hit the George car while it was in the third lane. According to Mrs. George, he came into the third lane at approximately a right angle. If so, it is a reasonable inference that he was intending to make a left turn at Fulton and apparently became confused as to the location of the corner. The jury was clearly justified in finding that for a person coming from a highway like the 13th Avenue Drive to cut across the lines of traffic traveling on a street like the 19th Avenue By-Pass, and to do so at an angle approaching a right angle to such traffic, under

conditions then existing, was negligence, and that such negligence was a proximate cause of the accident.

It must be emphasized that appellants cannot escape liability by simply showing that Mrs. George was contributively negligent. They did not plead contributory negligence on the part of respondent. They did allege that the accident was proximately caused by the negligence of Mrs. George. They assert that a careful reading of the record will disclose that Mrs. George did not see the Brush car because of her fogged side windows, until she was almost on top of it, and to avoid a collision she slammed on the brakes. They state that it was this sudden stop that threw respondent forward onto the windshield. That was appellants' theory at the time of trial, and it may be conceded that their evidence supports this theory. The difficulty is, that the jury did not believe this evidence. Appellants' whole argument on these issues rests on their interpretation of conflicting evidence which was resolved against them by the jury. Mrs. George was certainly not required to anticipate that, while she was moving along in the extreme left lane of traffic, an automobile would cross those lanes at approximately a right angle and run into the right front of her car.

The next contention of appellants is that the complaint does not state a cause of action. This contention is based on the fact that in paragraph II of the complaint, which is the paragraph describing how the accident occurred, respondent failed to allege that Brush operated his car "negligently," or that his negligence proximately caused the collision. The paragraph sets forth in some detail plaintiff's theory of the accident, but fails to allege, in express language, that Brush operated his car negligently or that his negligence proximately caused the accident. In paragraph III, however, it is alleged that "by reason of the negligence of the defendants" the plaintiff suffered certain enumerated injuries.

The complaint is by no means a model of pleading. Normally, a complaint based upon negligence, should allege that defendant was negligent, and should also allege a causal connection between such negligence and the injuries. (*Frisvold* v. *Leahy,* 15 Cal.App.2d 752, 756 [60 P.2d 151]; *South* v. *County of San Benito,* 40 Cal.App. 13, 21 [180 P. 354].)

It may also be conceded that the present complaint is deficient in these respects, and that the demurrer thereto

should have been sustained. Such concessions, however, do not aid appellants. As was pointed out in the Frisvold case, *supra,* page 756: "The requirement to specifically plead facts in a complaint is to apprise the defendant of the circumstances upon which plaintiff relies and to prevent defendant from being taken by surprise."

.The present record demonstrates that appellants were not "surprised" or in any other way injured by this defect in the complaint. They knew that the whole case turned upon whether Brush was negligent, and, if so, whether such negligence was the, or a, proximate cause of the injury. This is demonstrated by the fact that in their answer, they specifically deny negligence on the part of Brush, and deny a causal connection between Brush's acts and the injuries of respondent. This, alone, prevents the error in overruling the demurrer from being prejudicial. (*Perry* v. *McLaughlin,* 212 Cal. 1, 8 [297 P. 554] ; *Lindberg* v. *Pantoleon,* 97 Cal.App. 112, 116 [274 P. 1009].)

It is also well settled that the failure of a complaint to state a cause of action is not fatal to a judgment for the plaintiff unless the appellant can show that the error has resulted in a miscarriage of justice. Where the parties at the trial treat a certain issue as being involved, and the judgment is based on that issue, it is not a prejudicial error that the complaint defectively alleges, or fails to allege at all, that issue. (*Baker* v. *Miller,* 190 Cal. 263, 267 [212 P. 11] ; *Bonney* v. *Petty,* 125 Cal.App. 527, 530 [13 P.2d 969] ; *Nichols* v.. *Smith,* 136 Cal.App. 272, 278 [28 P.2d 693] ; *Browne* v. *Fernandez,* 140 Cal.App. 689 [36 P.2d 122], concurring opinion at p. 695; *Collins* v. *Welsh,* 2 Cal.App.2d 103, 108 [37 P.2d 505] ; *Semple* v. *Andrews,* 27 Cal.App.2d 228, 231 [81 P.2d 203] ; *Boro* v. *Ruzich,* 58 Cal.App. 2d 535, 540 [137 P.2d 51] ; *Miller* v. *Lantz,* 9 Cal.2d 544, 547 [71 P.2d 585].)

In the present case the bill of exceptions shows that the whole case was tried on the theory that the main issues were whether or not Brush was negligent and whether such negligence, if any, contributed to the accident. The jury, at the request of both parties, was instructed at length on these issues. Under such circumstances, the failure to properly plead these issues cannot be held to be prejudicial error.

Appellants urge that plaintiff's counsel was guilty of prejudicial misconduct during the examination of Dr. Har-

deman, respondent's attending physician. During his direct examination it developed that he had been present when a Dr. Custer had examined respondent. Respondent's counsel was apparently trying to bring out that Dr. Custer was employed by appellants, but appellants' counsel resisted this showing. Respondent's counsel, after asking Dr. Hardeman if he had been present when Dr. Custer examined respondent at his request, then asked: "And I had told you that he was their doctor to examine her, isn't that so?" Dr. Hardeman replied: "I think you told me that the insurance company. . . ." Before he could finish, the following occurred:

"Mr. Wayland: Now, if the court please, I am going to object to that. . . .

"Mr. Brewer: I ask that that go out, your Honor.

"Mr. Wayland: And I assign the question as misconduct, and error, under a citation I have here, and I ask the court to instruct the jury to disregard it. It is prejudicial misconduct."

The court thereupon admonished the jury as requested by counsel for appellants, and in its instructions specifically instructed that no insurance company was a party to the action and that the jury was prohibited, indirectly or directly, from considering the question of insurance.

Appellants, citing the dissenting opinion in *LaFargue* v. *United Railroads*, 183 Cal. 720, 728 [192 P. 538], and the case of *Citti* v. *Bava*, 204 Cal. 136 [266 P. 954], contend that this purely incidental reference to insurance was necessarily prejudicial and could not be cured by the admonition.

There are several answers to this contention. It will be noted that when this alleged error occurred, counsel for appellants did not then ask for a mistrial—all he asked for was that the jury be instructed to disregard it. This, the trial court did, not once, but twice. Appellants got all they asked for.

In the second place, this very point was passed on by the trial court in denying a motion for a new trial. ■ While, of course, its determination is not conclusive, it is entitled to considerable weight in determining whether the error was prejudicial. (*Wieck* v. *Hockett*, 115 Cal.App. 600 [2 P.2d 476]; *LaFargue* v. *United Railroads*, 183 Cal. 720 [192 P. 538]; *Hatfield* v. *Levy Brothers*, 18 Cal.2d 798, 814 [117 P.2d 841].)

■ In the third place, we cannot assume that the question was asked in bad faith by respondent's counsel. The fact that Dr. Custer had examined respondent was in evidence. If respondent did not produce Custer she might be thought by the jury to be suppressing evidence, unless the fact that Custer was employed by appellants was made to appear. Had counsel for appellants frankly admitted that fact, the challenged question probably would never have been asked. That respondent's fears that an explanation regarding Dr. Custer was necessary were well grounded is disclosed by the fact that the record shows that appellants failed to call the doctor as their witness. Unless his employment was explained, inferences adverse to respondent would have arisen. .

In the fourth place, this reference to insurance was merely incidental, and could not have harmed appellants at all. This is so because appellant Brush himself interjected that issue into the case while under direct examination by his own counsel. In describing what he did after the accident he stated: ''I asked the name of the driver, the make of the car, and the driver of the car for insurance reasons.''

Under these circumstances it must be held that the implied finding of the trial court that the question was not asked in bad faith, and was not prejudicial to appellants, cannot, and should not, be upset by this court. (*Speck* v. *Sarver,* 20 Cal. 2d 585, 589 [128 P.2d 16]; *Packard* v. *Moore,* 9 Cal.2d 571 [71 P.2d 922]; *Hughes* v. *Quackenbush,* 1 Cal.App.2d 349 [37 P.2d 99]; *Hatfield* v. *Levy Brothers,* 18 Cal.2d 798 [117 P.2d 841].) We must assume, under the circumstances, that the two admonitions by the court were effective. (*Hurtado* v. *San Diego Electric Ry. Co.,* 204 Cal. 446, 450 [268 P. 620]; *Smith* v. *Sabin,* 137 Cal.App. 567, 572 [31 P.2d 230]; *Wills* v. *J. J. Newberry Co.,* 43 Cal.App.2d 595, 608 [111 P.2d 346].)

■ Next, appellants contend that the trial court erred in its instructions. The court gave, substantially, the statutory definition of an intersection, instructed that the place the accident occurred was an intersection, and further instructed on who has the right of way in an intersection. Appellants urge that the place where the accident occurred was not an intersection, citing *Muther* v. *Capps,* 38 Cal.App. 721 [177 P. 882], and contend the giving of such an instruction constituted prej-

udicial error, citing *Wiley* v. *Cole,* 67 Cal.App. 762 [228 P. 550].

Section 86 of the Vehicle Code defines ''intersection,'' as follows: '' 'Intersection' is the area embraced within the prolongation of the lateral curb lines, or, if none, then the lateral boundary lines of the roadways, of two highways which join one another at approximately right angles or the area within which vehicles traveling upon different highways joining at any other angle may come in conflict.'' The trial court gave substantially this definition except that it omitted the phrase ''may come in conflict,'' and it concluded the instruction with this statement: ''So therefore by virtue of the definition in the code, I think it can be said that this is an intersection.'' It then instructed in the terms of section 550 (a) of the Vehicle Code to the effect that vehicles within an intersection have the right of way over vehicles approaching such intersection, and, further, that as between two cars approaching at approximately right angles the car to first enter an intersection has the right of way over the other car.

Appellants urge that the place of the collision was not within an intersection. They urge that the 19th Avenue By-Pass and the 13th Avenue Drive join and do not intersect Fulton Street until some 70 feet further north. That is true so far as the intersection with Fulton Street is concerned. But we are of the opinion that the place of the accident was within the ''intersection'' formed by the joinder of the 13th Avenue Drive and the 19th Avenue By-Pass, as that term is defined in section 86, *supra.* The accident happened in the throat of the Y formed by the coming together of those two streets. As already pointed out, those two streets join at slightly less than a right angle. Either the stem of the Y is a continuation of the 19th Avenue By-Pass, in which event the 13th Avenue Drive ends where it joins the 19th Avenue By-Pass, or the two streets join and continue as a joined street. In either event, the accident occurred at the throat of the Y and within the area ''embraced within the prolongation of the . . . lateral boundary lines of the roadways.'' ▮ Normally, the word ''intersect'' implies a crossing, but that general meaning is subject to statutory limitation. The great weight of authority is to the effect that a crossing is not essential to an intersection when that term is defined as it is in section 86, or by a substantially similar definition. (See annotations 31 A.L.R. 488; 78 A.L.R.

1198.) The definition found in section 86 negatives the necessity of a crossing. It defines the area common to two streets that join as the area within the intersection.

It is true that there is some language in *Muther* v. *Capps,* 38 Cal.App. 721 [177 P. 882], that indicates that generally a "crossing" is indispensable to an intersection. That case was written by Judge Lennon, then the presiding justice of this court, and joined in by two pro tempore judges. Whether this renders the opinion void need not now be discussed. The Supreme Court, in denying a hearing, stated that while "ordinarily the definition of an intersecting street or highway may be that declared in the opinion of the district court of appeal" that the then existing statutory definition of that term controls.

In *Lawrence* v. *Goodwill,* 44 Cal.App. 440 [186 P. 781], it was expressly held that a crossing of highways was not indispensable to an "intersection" under the statutory definition. ▮ We think the trial court correctly instructed that the spot where the accident occurred was within the statutory definition of intersection. ▮ The omission of the words "may come in conflict" from the instruction was not erroneous. Obviously, where two streets join, the area common to the two streets is an area where vehicles may come in conflict. The phrase adds nothing to the legal definition.

▮ Appellants next object to an instruction that told the jury that before plaintiff could recover it must appear by a preponderance of the evidence that defendant "was guilty of some act of negligence which contributed proximately to the accident." The words "contributed proximately," to which appellants object, was repeated later in the instruction. In *Starr* v. *Los Angeles Ry. Corp.,* 187 Cal. 270 [201 P. 599], it was held that an instruction to the effect that if defendant's "speed contributed to or was the proximate cause of the accident" defendant was liable, was erroneous. This was so because the instruction ignored the defense of contributory negligence, an issue not involved in the instant case, and because it told the jury that the defendant was liable if its acts contributed to the accident but did not proximately cause it. The present instruction is not subject to this last criticism. Under the instruction here given, before the jury could find that defendants were liable it had to find that defendants' acts "contributed proximately" to the accident. In the absence of the issue of contributory negligence, that is sound law. Moreover, the jury was instructed at length and correctly on

what constituted proximate cause. No error appears in this instruction.

Appellants also object to the failure of the trial court to give proffered instructions on unavoidable accident, proximate cause and damages. Under the pleadings and evidence, unavoidable accident was not an issue in the case. The jury was fully instructed on proximate cause and damages. There was no error in refusing to give the proffered instructions.

The last contention necessary to discuss relates to the instruction given on special damages. It reads: "Now, speaking about the measure of damages: If you should determine to find a verdict for the plaintiff in this case, then the plaintiff is entitled to recover such damages, within the amount claimed—and I think the total is $13,333, as in your opinion will compensate her for the pecuniary damage proved to have been sustained by her and proximately caused her by the wrong complained of. In estimating the amount of such damages you may consider the physical and mental pain, if any, suffered; the nature, extent and severity of his [her] injury, or injuries, if any; the extent, degree and character of mental or physical suffering, if any; its duration and severity; medical expenses incurred or paid, the cost of nursing and attendance; the loss of time, if any, the value thereof; and the loss of earning capacity, if any. You may also consider whether the injury, if any, was temporary in its nature or is permanent in its character. And from all of these elements, you will resolve what sum will fairly compensate the plaintiff for the injury sustained, not exceeding the sum sued for.''

Appellants urge that the court did not limit the recovery for the special items to those paid or incurred by her as distinguished from those incurred or paid by her husband. The record shows that respondent, as a result of the accident, employed a nurse for about a month and a maid for over a year. A trip to Palm Springs was ordered by the doctor, and respondent spent three months there. Respondent testified that she paid her doctor $200 and paid $30 for X-rays, and another $20 for medicines; that her husband paid the nurse and maid and that she and her husband paid for the Palm Springs trip together. There was evidence that an operation costing at least $500 was necessary to repair respondent's nose.

Of course, consequential damages paid for out of community funds are normally recoverable by the husband and not by the wife. (*Sanderson* v. *Niemann*, 17 Cal.2d 563, 569

[110 P.2d 1025].) There are exceptions to that rule where the wife is the agent of the community.

Appellants interpret the quoted instruction as telling the jury that respondent could recover these consequential damages whether she or her husband paid for them, or whether they were paid from the community or separate property of the parties. The instruction, while not as clear as might be desired, is not reasonably subject to that criticism. As we read the instruction, the jury was told that only those consequential damages sustained by respondent were recoverable. The exact language is that respondent is entitled to recover damages that "will compensate *her* for the pecuniary damage proved to have been sustained by *her* and *proximately caused her* by the wrong complained of." Then the court itemizes the items for which recovery may be had if they meet that test. The reasonable interpretation of this instruction is that respondent was limited to the pecuniary loss that she suffered, and could not recover unless she suffered the loss. It may be that the more complete and detailed instruction offered by appellants on this subject properly could have been given, but the failure to give such instruction could not have prejudiced appellants. The injuries suffered by respondent were serious and apparently permanent. They alone justify the award.

The judgment appealed from is affirmed.

Knight, J., and Ward, J., concurred.