[Civ. No. 14693.   First Dist., Div. One.   Sept. 17, 1951.]

ANNA MAE CLARK, Appellant, v. OSCAR A. BRADLEY, Respondent.

538

David H. Adams for Appellant.

Jensen, Cassin, Overson, Zavlaris & Rendler for Respondent.

BRAY, J.—After a judgment in favor of plaintiff, defendant moved for a new trial, filing certain affidavits. Plaintiff purports to appeal from an order denying her motion to strike one of those affidavits. The court granted the motion for new trial. Plaintiff appeals.

## Question Presented

(1) Was the admission in evidence without objection of the back portion of a certain card error which justified the court in granting a new trial? (2) Was the affidavit of the trial juror to impeach her verdict or to support it?

## Record

Pursuant to section 196(a) of the Civil Code, plaintiff, mother of a minor illegitimate child, brought this action to require defendant, the putative father, to help support and educate the child. Defendant denied paternity. A jury found defendant to be the father. A judgment for its support was entered against defendant. Thereafter defendant moved for a new trial on all statutory grounds. Plaintiff moved to strike from the record the affidavit of certain trial jurors. The court struck out the affidavits of two of the jurors but refused to strike that of juror Leone, on the ground that it was not in impeachment, but in support, of her verdict. It granted the new trial solely on the ground of error in the admission in evidence of certain material on the back of a certain card.

1. Was There Error in the Admission of Evidence?
*Evidence.*

A brief statement of the evidence is necessary as background for consideration of the claimed error. Plaintiff's testimony follows. She, an unmarried woman, became acquainted with defendant in 1936. In 1939 she was employed as housekeeper in the home of defendant, his wife and small children. A part of her duties was to take care of the daughter, Marjorie. She lived in the Bradley home in a room which had an outside entrance. In the early part of 1941 she and Bradley commenced having intimate relations, which continued for several years. In May, 1942, she went to work for the draft board, left the Bradley home and took a room in a house for college girls. Defendant proposed marriage to her in June, 1942. He gave her a key to his place of business and she gave him a key to her boarding house. He visited her at her room there. In September, 1943, she went to Los Angeles, returning to San Jose on October 4th. The week she returned she had intercourse with defendant on Monday, Wednesday, Thursday and Friday. During the months prior to her trip to Los Angeles she had frequent intercourse with defendant. In the latter part of October or early

part of November she discovered that she was pregnant. She told defendant about it. He told her not to do anything, that he would marry her and take her away. She now saw him more often than before. On April 15, 1944, she left San Jose for her home in Missouri. Defendant packed her bags and took her to the station. He said he would come to see her. The child was born June 26, 1944. Plaintiff, the child and defendant stood together before the jury for its observation of them. Plaintiff testified that for Christmas, 1942, defendant gave her a bracelet and heart with the initial "B" engraved on the heart and that the following Valentine's Day he gave her a second heart for it. Defendant's wife and son testified that these were gifts given by Mrs. Bradley at Marjorie's suggestion and that there was no "B" on the heart when given.

Plaintiff offered in evidence certain letters which she claimed were sent her by defendant. They were rather sticky love letters and definitely indicate intimacy between the parties. Defendant denied that he had written them. Plaintiff's handwriting expert testified they were in defendant's handwriting, while defendant's expert said they were not. Plaintiff testified that while she was in Missouri she wrote defendant a letter. Defendant admits receiving a letter from her. They disagree as to its contents. Defendant said it had been destroyed. Plaintiff testified it started out "Hello Honey" and that it contained an inquiry as to whether he was waiting until his wife finished school before coming to her. "I know that we both have done wrong, but the only right thing now for us to do is to take care of our child. I have been to the doctor and he states that the baby will be born either the 4th or the 7th of July." Defendant testified that the letter was addressed "Dear Bradley" and stated: "I am writing you this hoping that you will help me with my responsibilities. I have been in the hospital with kidney stones." It then stated that her folks could not work because of age and that plaintiff was not asking money as a gift but only as a loan and that she would pay it back as soon as she got on her feet. A card which defendant admitted writing and sending in answer to the letter he claimed he received was admitted in evidence. This reads in part: "I should think you would realize that you have caused enough trouble in our house—especially the last time you were here. Any responsibility I have is to my family—Ruth, Jerry and Margaret, whom I

love and will do everything to protect and keep. I have no other interest but in them. Your unwelcome letter has done nothing but upset this entire house and we are not interested in your outcome. Your difficulties are not my responsibilities. I am interested only in my own family—have been and always will be.''

Defendant denied any acts of sexual intercourse with plaintiff. A Mrs. Rutherford, who ran the boarding house where plaintiff stayed, testified that on one occasion she asked defendant, ''Well, what about that key you have to the house?'' and that laughingly he said, ''That key like that won't fit anything.'' Defendant denied that he ever had such a key. A Mrs. Gardner testified that she lived near the boarding house and that in the early part of 1943 and during that summer she saw defendant and plaintiff together near the boarding house between 7:40 and 7:45 a. m. Defendant denied that he ever was with plaintiff at such time or place. Plaintiff testified that defendant would come to her room early in the morning. The court appointed a pathologist to make blood tests of defendant and the child. After making them, the doctor testified that they were inconclusive but they did not entirely rule out the possibility that defendant is the father of the child. Defendant's wife testified that she never left the house overnight without defendant during the time when plaintiff testified that defendant came to her room while Mrs. Bradley was staying overnight in San Francisco; that defendant worked for the Food Machinery Corporation every night from 5 p. m. to 3 a. m. from February, 1942, to mid October, 1943. This was to refute plaintiff's claim that defendant was at her room during July and August and particularly the week following October 4th, which was probably the period of conception. However, the records of the Food Machinery Corporation indicate that plaintiff did not work there after October 1. Mrs. Bradley testified that the sex relations between her and her husband were normal during all the time plaintiff claimed to be having intercourse with defendant. Mrs. Bradley contradicted other testimony of plaintiff. One Lucas testified that he worked the 5 p. m. to 3 a. m. shift with defendant and that the latter worked nightly until October 14. He did not know, however, when defendant left work.

It is apparent that there was a direct conflict in the evidence. The jury were polled and were found to be 9 to 3.

*The Claimed Error.*

This brings us to the situation when the claimed error occurred. Defendant and his wife claimed that on the nights succeeding October 4th when plaintiff testified defendant was having intercourse with her he actually was at work at the plant of the Food Machinery Corporation. The payroll clerk of that company was on the stand with its records. He produced a "Time—Production—Pay" sheet which he claimed contained defendant's employment record for October. Defendant immediately objected on the ground that the sheet was that of A. A. Bradley and not O. A. Bradley, defendant's name. However, the sheet contained the clock number S. M. 75. Thereupon, to show that the sheet actually was that of defendant and that the A. A. initials were merely a clerical error, the witness testified that each employee had an identifying number and produced a "Tool Check Receipt" signed by defendant and containing the payroll number S. M. 75. He also produced an employment notice in the name of Oscar Arnold Bradley showing the same payroll number and a discharge or removal notice in the name of O. A. Bradley with the same payroll number. Thereupon plaintiff offered the three cards and the sheet in evidence. Defendant's only objection was that the sheet showed the name A. A. Bradley and not O. A. Bradley. The court overruled the objection and admitted the sheet and cards in evidence. It is the discharge or removal notice with which we are particularly concerned, the admission of which the court later held was sufficient error to justify granting a new trial. This card, dated October 11, 1943, shows the name O. A. Bradley and the payroll number S. M. 75. It states, on its face, "been laid off" and "cause for leaving—absent." On the back of the card there are certain boxes to be marked with an "X" to indicate the character of the employee or his work. In the column "competency," "good" is checked. In the column "conduct," "unreliable" is checked. In the column "speed," "medium" is checked. "Temperate?" "yes" is checked. "Do you recommend re-employment," "no" is checked. Under "Remarks" appears "absent."

In granting the motion for new trial the trial judge filed a memorandum in which he set forth, among other things, that the new trial was granted for "the reason that through inadvertence" there was admitted in evidence the back portion of the "Discharge or Removal Notice" upon which appeared unfavorable statements with regard to defendant's

work record, which statements "were clearly inadmissible as being incompetent, irrelevant and immaterial"; that the purpose in admitting this notice as well as the two other cards accompanying the "Time—Production—Pay Sheet" was to show that the sheet was in fact the record of defendant; that in ruling on the admissibility of these records the court considered only what appeared on the face of the document and was not apprised of the matter on the back of the notice card; that the court is convinced that the records were offered by plaintiff in good faith and properly and that all of the records with the exception of the back of the notice card were properly admitted; that the admission of this card was inadvertent and "was error and serious error and one which could have substantially affected the verdict"; that it did so affect the verdict is evidenced by the affidavit of the juror Leone. The court then pointed out that defendant offered in evidence a letter from the same employer containing statements favorable to defendant, which statements were, on objection, deleted from the letter. The records were taken by the jury into the jury room.

Plaintiff's attorney's affidavit used on motion for new trial pointed out that in offering the records including the card in question, no portion of the records was concealed from defendant's attorney, nor was the offer restricted to the face of the sheet or cards, nor was the purpose of the offer limited in any way; moreover, that the reporter's transcript shows that it was the defendant's attorney who apparently handed the records to the judge. The judge stated further: ". . . the evidence, although sufficient to sustain the verdict, as to many material facts is in sharp conflict and under the circumstances the error complained of may well have turned the scale against the defendant since the inadmissible matter considered by the jury had a direct bearing on his credibility as a witness."

There can be no question that, except the word "absent" which also appears on its face, the matter on the back of the card, if objected to, was inadmissible. ■ The credibility of a witness cannot be attacked by an employer's estimate of his character, conduct, temperateness or desirability for reemployment. ■ Generally, where a party fails to object to evidence which, as here, is partly admissible, he is deemed to have waived his right to object. "The party offering evidence is entitled to have the particular portion of the evidence objected to pointed out, and the specific

ground of the objection stated, in order that he may obviate the objection or waive the testimony, if he is unwilling to take the risk of error." (2 Cal.Jur. § 82, p. 264.) The rule is well stated in *Bayers* v. *Barry*, 114 Wash. 252 [194 P. 993], where appellants "made strenuous objection" to the introduction of a certain letter. "Unquestionably, parts of this letter are open to the objections made to it; but other parts of it are entirely proper to have been received in evidence. Had appellants asked the court to keep from the jury such portions of the letter as were objectionable, it would doubtless have been the court's duty to have complied therewith. This request, however, the appellants did not make; they objected to the introduction of the letter as a whole, and since parts of it were properly receivable, the appellants cannot now complain that the entire letter was received." (P. 996.) The rule is stated in another way in *Crocker* v. *Carpenter*, 98 Cal. 418, 421 [33 P. 271]: "When such a general objection is overruled by a trial court, the party against whom the ruling is made cannot be permitted for the first time to urge in the appellate court the particular objection which, if it had been openly urged in the trial court at the time of the ruling complained of, might have been easily cured. This is not laying down a merely technical rule. It is one which has its foundation in the proper consideration of what is due to the court and adverse counsel in the trial of a case."

We are not dealing with a situation where a party is raising for the first time, on appeal, a contention that evidence was improperly admitted, but with a situation where, on motion for new trial, the trial court has found that it inadvertently admitted evidence which it would not have admitted had it known its true content, and which the court has found was not objected to through inadvertence. Moreover, it is a fair inference from the court's statement that it found that the plaintiff had offered the objectionable matter also through inadvertence. In the argument on the motion for new trial plaintiff's counsel stated, referring to the offer of the cards: ". . . I was not mindful, I don't know any other way to say it, but I was not mindful. It did not occur to me, I was not considering these matters on the back of these records, or I certainly would have called it to the attention of counsel and Court, although I don't know of any rule which requires that as a duty of counsel to be pointing out parts of evidence that might be objected to to opposing coun-

sel.'' Thus it appears that neither the attorney for plaintiff, the court, nor the attorney for defendant was considering the material on the back of the cards. We have a situation, then, in which, because of the inadvertence of both parties and the judge, inadmissible matter was given the jury; and, according to the judge who presided at the trial, that matter ''may well have turned the scale'' as the evidence, ''although sufficient to sustain the verdict,'' was in ''sharp conflict'' as ''to many material facts.''

The minds of the parties and the court were concentrated on the question of tying in the time clock numbers on the O. A. Bradley cards with the time sheet of A. A. Bradley. While there was no limitation on the offer of the cards, it is obvious from a reading of the record that all concerned considered them as offered solely for the one purpose.

The rule stated in the Bayers case, *supra,* and in the Crocker case, to the effect that the burden of calling attention to the objectionable matter is on the party against whom the evidence is offered, is the general rule. However, there is some authority to the effect that the burden is on the party offering the evidence. ''If *several facts* are included in the offer, some admissible and others inadmissible, then the whole (if properly objected to) is inadmissible; in other words, it is for the proponent to sever the good and the bad parts.'' (Wigmore on Evidence, 3d ed., vol. 1, § 17(b) (2), p. 320.)

The Bayers case is distinguishable from our case. There the party against whom the evidence was offered had full knowledge of the alleged prejudicial effect of the inadmissible portions. Likewise in the Crocker case the party against whom the evidence was offered, although fully familiar with the papers offered, failed to make any specific objections.

Plaintiff relies on the case of *Bennett* v. *Nazzaro,* 144 Misc. 450 [258 N.Y.Supp. 828]. In an action for personal injuries plaintiff, to prove ownership of the defendant's car, introduced a certified copy of defendant's application for registration of the car. On the back thereof, unknown to either of the attorneys, appeared information that defendant carried liability insurance and had been involved in a prior automobile accident. It was admitted without objection and taken to the jury room. Defendant moved to set aside a verdict in favor of plaintiff because of the admission in evidence of these statements on the back of the application. The judge, in denying the motion, stated that he did not think that this

information influenced the jury. He then stated that even if it did, defendant's failure to object to the introduction of the application barred him from raising the question on motion to set aside the verdict. He stated: "The certified copy application was competent evidence, and the defendant, not having discovered and objected to the information on the back thereof, cannot now be heard to complain that this incompetent evidence was examined and considered by the jury. . . .

"The failure to object to incompetent evidence has been construed as a waiver, and when, as here, the evidence admitted is competent, the failure to object is fatal, and this is so notwithstanding no objection was made because the objecting party did not know the contents of the exhibit offered. *Crane* v. *Powell*, 139 N.Y. 379, 34 N.E. 911; *Flora* v. *Carbean*, 38 N.Y. 111; *Ford* v. *Snook*, 205 App.Div. 194, 199 N.Y.Supp. 630." (Pp. 831-832 [258 N.Y.Supp.].) However, the effect of the judge's statement is minimized by the following statement in his opinion (p. 831 [258 N.Y.Supp.]): "If the plaintiff's attorneys had known of the statements on the back of the card, it would have been their affirmative duty when offering the card in evidence to call the court's and their adversaries' attention to the back of the card, and then, of course, only the essential fact of White's ownership would have been given to the jury. Inasmuch as the plaintiff's attorneys did not have such knowledge, the mere fact that the card contained some information, which being offered by itself would have been excluded, does not make the receipt of the registration application incompetent." In our case the plaintiff's attorney did know of the objectionable material. Moreover, the trial judge there found that the inadmissible material was not prejudicial, while here, the trial judge found that it was. Secondly, the trial judge there did not find, as did the trial judge here, that the failure to object was excusable. The Bennett case and the cases therein cited, while somewhat persuasive, are not determinative of the question here. Under the peculiar circumstances of our case, the rule of those cases should not be followed. It is unfortunate that a case which involved the parenthood of a child and which took several days to try must be tried over again. However, it is important under our judicial system that a case be fairly tried. Certainly it cannot be said that a fair trial was had, where inadmissible evidence which the court found to be prejudicial got before the jury through the inadvertence of both parties and the

court. We have read the transcript and agree with the trial court that the evidence was sufficient to sustain the verdict. The trial judge who heard all the evidence in the case has held that the error was serious and might have affected the verdict. To upset this finding we would have to hold as a matter of law that the error could not have affected the verdict. This we cannot do. ▆ ▆ "It is settled that a motion for a new trial is, to a large extent, addressed to the legal discretion of the court to which the application is made and that its action is conclusive and will not be disturbed in the absence of a clear and affirmative showing of a gross, manifest or unmistakable abuse of discretion. (20 Cal.Jur. 27.) Such discretion is very wide and every presumption is indulged in support of the action of the court in passing upon the motion. The discretion must be reasonably exercised to the accomplishment of justice, and where there appears to be a reasonable or even fairly debatable justification therefor, an order granting a new trial will not be set aside, although a contrary order might not be disapproved or the appellate court might be inclined to take a different view. (20 Cal.Jur. 30.)" (*Whitfield* v. *Debrincat*, 18 Cal.App.2d 730, 733-734 [64 P.2d 960].)

## 2. THE LEONE AFFIDAVIT.

On the motion for new trial, the affidavits of three jurors were offered in evidence. Two of these affidavits were denied admission. ▆ The third, that of juror Leone, was admitted on the theory that it did not tend to impeach her verdict but to support it. This affidavit should not have been admitted as it did tend to impeach the juror's verdict. The affidavit stated that the juror considered the matter on the back of the card "as impeaching Bradley's testimony because I felt that if his employer could not rely upon him that I could not rely upon his testimony in the case; the fact that Mr. Bradley was not reliable in the opinion of his employer, Food Machinery Corporation, was discussed by me and various other members of the jury during our deliberation in the jury room, and was of such magnitude as to affect my verdict . . ." It is conceded that affidavits of jurors may not be used to contradict, impeach or defeat the verdict. (20 Cal.Jur. § 41, p. 61; 46 Corpus Juris, § 379(h), p. 358; *Saltzman* v. *Sunset Tel. etc. Co.*, 125 Cal. 501 [58 P. 169]; *Toomes* v. *Nunes*, 24 Cal.App.2d 395 [75 P.2d 94].) Jurors' affidavits, however, are permissible to substantiate their ver-

dicts. (20 Cal.Jur. § 41, p. 61.) The only purpose in offering the Leone affidavit was to show that her verdict was based primarily on the objectionable evidence, and hence it obviously was in impeachment of her verdict. In *Bennett* v. *Nazzaro, supra* (258 N.Y.Supp. 828), it was held (p. 830): "Jurors' affidavits will sometimes be received to sustain a verdict, but should not be received in a case like this, where it is claimed that the jury was influenced by improper evidence."

But the fact that the Leone affidavit was erroneously admitted does not cause a reversal of the court's order granting a new trial. The trial judge had a right to assume that the information on the back of the card had the effect on the jury that ordinarily would be expected. Moreover, the judge's statement shows that he came to his conclusion of the prejudice of the evidence irrespective of the affidavit, for he said: "It is apparent, I believe, that the admission into evidence of the card last referred to, containing the objectionable matter, was error and serious error and one which could have substantially affected the verdict." He then stated: "That it did so affect the verdict is evidenced by" the Leone affidavit. We are satisfied that while the admission of that affidavit was error, it was without prejudice, as the court had concluded without it that the objectionable evidence might reasonably have affected the verdict. It must be remembered in this connection that the verdict was 9 to 3.

The order refusing to strike the affidavit of juror Leone, being otherwise reviewable, is not appealable and the purported appeal therefrom is dismissed. The other order appealed from is affirmed. Each party shall bear his own costs.

Peters, P. J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied October 17, 1951, and appellant's petition for a hearing by the Supreme Court was denied November 15, 1951.