[Civ. No. 15394.   First Dist., Div. One.   Feb. 11, 1953.]

ORLIE A. HOLLAND, Appellant, v. LEROY FREEMAN KERR et al., Respondents.

Abe Hart and Joseph L. Bortin for Appellant.

Dana, Bledsoe & Smith, Joseph W. Rogers, Jr., Belcher & Koller, Clark & Heafey and Gerald P. Martin for Respondents.

BRAY, J.—As a result of a collision between an automobile driven by defendant Bisek and in which plaintiff was riding, and one driven by defendant Kerr, plaintiff sued both defendants. From a judgment of nonsuit in favor of Bisek and a judgment on a jury verdict in favor of Kerr, plaintiff appeals.

## QUESTIONS PRESENTED

1. Was there any evidence of willful misconduct, and hence the judgment of nonsuit was improper? 2. Did the court err in refusing instructions based on section 2061, subdivisions 6 and 7, and section 1963, subdivision 5, Code of Civil Procedure, where photographs were admitted in evidence without objection, in the absence of the photographer who took them? 3. Assuming that after judgment of nonsuit granted, evidence tending to show willful misconduct was introduced, did the court abuse its discretion in denying a motion for new trial?

## EVIDENCE PRIOR TO NONSUIT

On Mother's Day, 1950, plaintiff, his wife, Bisek (plaintiff's brother-in-law), his wife and son, Knight (plaintiff's son-in-law), and his wife (plaintiff's daughter), were picnicking atop Mt. Diablo. About 5:30 they started to return home. Knight left first, having the women with him in his car. Bisek followed with his son and plaintiff. in his car. They had gone down about 2 miles of winding road, the Knight car being in sight most of the time. There was traffic coming up the hill. While going about 20 to 30 miles an hour they came to a very short "U" turn. Plaintiff testified that as they came around this bend, another car was approaching and "instantly we met." There was no time for anyone to take action. Plaintiff was knocked unconscious and otherwise injured. Plaintiff identified and introduced photographs of what he claimed was the scene of the accident, a blind turn. He testified that coming down the hill, the speeds of the Bisek car, and the Knight car, which kept about 300 to 500 feet ahead, were about the same, and that there was nothing about Bisek's speed, manner of or conduct in driving, to give plaintiff concern. Bisek was driving as plaintiff would have driven had he been at the wheel. The speed could have been as low as 15 to 20 miles an hour. Neither plaintiff nor Bisek had had anything to drink. The roadway was approximately 20 feet wide. In plaintiff's judg-

ment both cars were straddling the imaginary center line, Bisek's car being 2 or 3 feet over that line. On cross-examination plaintiff was shown certain photographs which will be discussed hereafter. Plaintiff was positive that the scene depicted in these photographs was not the scene of the accident. Plaintiff testified that traffic coming up the hill was light and that they passed cars occasionally.

Knight testified that the car he was driving was about 200 feet ahead of Bisek's car, going about 15 to 20 miles an hour. Plaintiff had been following him at about that speed. Traffic was "probably normal." Fifteen cars coming upgrade accumulated between the time of the accident and the time when he transferred the unconscious plaintiff into his car and left for the hospital. He saw the accident through his mirror. He stopped his car and ran back. Defendant Kerr's car was partially on the shoulder. Bisek's car was entirely on the right side of the highway. He identified plaintiff's pictures as showing the place of the accident, and denied that it was at the scene of Kerr's pictures. When Kerr's car passed him going towards the scene of the accident Knight had to go to his extreme right to keep from hitting him, as defendant Kerr's car was straddling the center. Kerr, called under section 2055, Code of Civil Procedure, testified that plaintiff's pictures did not show the scene of the accident; that just before the point of collision he was forced off the road by a car (apparently the Knight car). Kerr did not sound his horn. The accident happened some distance from a curve. Both plaintiff and Knight claimed it happened just as plaintiff got around a curve. Kerr stated that the accident happened as he was in the act of getting back on the road. He was going into second gear, going about 4 to 5 miles an hour. At the time of the collision, however, he was completely stopped.

## No Willful Misconduct

On the foregoing testimony, the court granted a nonsuit in favor of defendant Bisek. Obviously there was not an iota of evidence of willful misconduct. Plaintiff contends that taking the testimony strongest in favor of his contention, as is the rule in considering a motion for nonsuit, the evidence showed that Bisek was driving on the wrong side of the road, and that, as Bisek knew there was traffic coming up the hill and was driving at a controllable speed, 15 to 20 miles an hour, he should have had knowledge of possible danger, and his failure to avoid an accident was either the

result of volition or reckless disregard for the safety of others in the face of probable danger. Completely ignoring plaintiff's own testimony to the effect that Bisek was driving the car the way that plaintiff would have driven it, that Kerr's car came suddenly around the curve 2 or 3 feet over the wrong side of the center, and that "there was no time to take any action by anyone," the most the evidence showed at the time of the motion for nonsuit was that Bisek could be guilty of ordinary negligence only. Neither the evidence nor any reasonable inferences therefrom would have justified a finding of willful misconduct. (See discussion in *Weber* v. *Pinyan,* 9 Cal.2d 226 [70 P.2d 183, 112 A.L.R. 407], as to difference between *gross* negligence and willful misconduct; and in *Porter* v. *Hofman,* 12 Cal.2d 445 [85 P.2d 447], as to difference between ordinary negligence and willful misconduct.) The court did not err in granting the motion.

### Evidence Subsequent to Nonsuit

One Prestwich testified that as he was driving down the mountain, Bisek's car and another automobile (apparently Knight's) passed him going in the same direction "at a rate of speed" and it was directly ahead of him at the time of the accident. It occurred 100 to 150 feet after Bisek's car had gone around the curve. It was going 15 to 20 miles an hour. As it went around the curve it swung wide into its left side of the highway. When it hit Kerr's car, the latter was on its right shoulder as far as it could get without hitting the bank. Kerr's car appeared as though it was starting to come back on the highway and at the time of impact appeared to be stopped. Prestwich identified all but one of Kerr's photographs as showing the scene of the accident. (In the one he did not identify a curve obscures the point of impact as claimed by Kerr.) He then identified five photographs (defendant's Exhibits 6 to 10) as showing the cars resting at the scene of the accident immediately after the accident. They show that Kerr's car was to the right of the highway on the shoulder and show Bisek's skidmarks starting from the middle of the highway sliding over to the left point of impact. They completely corroborate Kerr's version of the accident. Bassett, the chief ranger at Mt. Diablo State Park, who came to the scene of the accident while the cars were still there, identified Kerr's photographs as depicting the scene and testified that plaintiff's photographs

were of a place about a mile away. Bassett talked to the photographer who was there taking Kerr's pictures.

Kerr, also a state ranger, testified that as he was going uphill about 15 miles an hour and about 200 feet from the accident, Knight's car came downhill and made an attempt to pass another car going downhill, compelling Kerr to pull over to his right onto the shoulder. Kerr came to a stop, then started up and started to pull back onto the pavement when he saw Bisek's car about 200 feet away coming towards him at a speed of 30 to 35 miles an hour. Kerr stopped. Bisek's car struck his car. Kerr identified his own pictures as being the true scene. Kerr smelled alcohol on Bisek's breath there. Bisek's insurance company paid Kerr $500 for damages to his car and bruises to himself. Mrs. Kerr corroborated Kerr's version of the accident. California Highway Patrolman Galbraith identified Kerr's pictures showing the cars after the accident. He is shown in one of the pictures. The skidmarks of Bisek's car were approximately 33 feet long. He detected the odor of alcohol on Bisek's breath. He charged Bisek only with driving on the wrong side of the road. Brown, assistant park ranger, also identified Kerr's pictures and smelled liquor on Bisek's breath.

### INSTRUCTIONS

Obviously, there was ample evidence to support the jury's verdict for Kerr. ■ Plaintiff offered an instruction based on section 2061, subdivisions 6 and 7, Code of Civil Procedure, to the effect that if it is within the power of a party to produce stronger or more satisfactory evidence than which was offered on a material point, the jury should view the weaker evidence with distrust. He also offered one based on section 1963, subdivision 5, Code of Civil Procedure, to the effect that if the jury should find that any evidence was willfully suppressed, the jury might presume, in the absence of evidence to the contrary, that such evidence, if produced, would be adverse to the party willfully suppressing the evidence. The court properly refused to give these instructions. Plaintiff very ingeniously claims that as the photographer who took defendant's photographs was not identified, produced, or his absence explained, these instructions should have been given upon the theory that possibly the photographer might have taken other photographs which might have been contradictory to those taken. Had he been produced as a witness such fact might have been discovered on cross-examination. The court properly refused to give the instructions.

The photographs were identified by five witnesses, three of whom were apparently disinterested, who testified that they truly represented the scene of the accident. (Two or three of them are shown in the pictures.) No objection was made to their introduction nor to the failure to identify or produce the photographer. ■ Where a witness testifies that a photograph truly represents what it purports to represent it is not necessary to its introduction in evidence that the one who took it be produced. (*Berkovitz* v. *American River Gravel Co.*, 191 Cal. 195, 201 [215 P. 675].) Had plaintiff desired the photographer identified he could have so stated and his name could have been thus obtained; and had he desired him to testify he could have subpoenaed him. Ranger Brown pointed out that in one of the photographs he is shown making out a report on the hood of one of the cars involved in the accident, and then stated that he wrote into his report the name of the person taking the pictures. Moreover, section 2061, subdivisions 6 and 7, does not apply. ■ The nonproduction of the photographer does not weaken the evidence of photographs identified as true by eyewitnesses. Where the record fails to show that defendant produced inferior evidence when it was in his power to produce evidence of a higher degree, the giving of the .requested instruction would be error. (*Thomas* v. *Gates,* 126 Cal. 1, 6 [58 P. 315].) Nor does section 1963, subdivision 5, apply. There was no suppression of evidence here. It would have been serious error to give the proffered instruction on suppression. (*Estate of Moore,* 180 Cal. 570, 585 [182 P. 285].) It is very seldom in the trial of cases that when photographs can be identified properly otherwise, the photographer is produced.

NEW TRIAL

■ Plaintiff's contention that the trial court abused its discretion in denying the new trial again is ingenious. He contends that Kerr testified favorably to Bisek to help him get a nonsuit, and then changed his testimony after it was granted, to protect himself, and that therefore the court should have granted a new trial of the whole case. The alleged change of testimony is this: When called under section 2055 and before nonsuit, Kerr was asked how sharp a curve was it, that is, the one where the collision took place. He replied, "It's rather a sharp curve, it's a very sharp curve." After nonsuit, he testified that from the point where the cars collided to the center of the curve it was approximately 200 feet and he saw the Bisek car approaching at

that distance. While a comparison of these two statements makes it appear that the second is contradictory of the first, a reading of Kerr's testimony prior to the question above set forth shows that in speaking of the curve as the one where the collision took place Kerr was not referring to the point of impact but to the general location. He had been testifying that the scene in plaintiff's photographs was not the scene of the accident,* that in contrast with the wider curve and low bank shown in plaintiff's photographs, the accident took place where there was a sharp curve and a high bank. Moreover, he then stated that he was approaching the curve when the accident happened but "I was still some distance from the curve." Actually there was no change in testimony. In testifying after the nonsuit he was asked in greater detail than during his examination in plaintiff's case in chief. Plaintiff charges collusion between Kerr and Bisek because Kerr testified on cross-examination before nonsuit (he was not asked concerning the subject thereafter) that he did not blow his horn, thereby, says plaintiff, admitting negligence. Assuming, but not deciding, that failure to blow the horn under the circumstances constituted negligence, we fail to understand how such an admission of negligence showed collusion between Kerr and Bisek. There is no basis for a conclusion that the court erred in refusing to grant a new trial. Moreover, assuming, but not deciding, that the evidence introduced after the nonsuit might have supported a finding of willful misconduct, still such fact would not cause an abuse of discretion in denying a new trial. ■ The situation on motion for new trial is entirely different than on motion for nonsuit. On the latter it is the duty of the court, if there is any evidence which would support a finding by the jury of willful misconduct, to deny a motion for nonsuit. But on a motion for new trial, it is not a question of whether there is evidence to support a particular finding, but whether the court abused its discretion in denying a new trial. (See *Rather* v. *City & County of San Francisco,* 81 Cal.App.2d 625, 638 [184 P.2d 727] ; *Clark* v. *Bradley,* 106 Cal.App.2d 537, 547 [235 P.2d 439] ; *Estate of Baird,* 198 Cal. 490, 503 [246 P. 324] (motion for new trial after judgment of nonsuit).) Here the preponderance of, if not the entire, evidence certainly is against a finding of willful misconduct by Bisek, just as it is in favor of the jury's find-

---

*Plaintiff, in his brief, concedes that his photographs are of the wrong place.

ing that Kerr was not guilty of negligence. Therefore there was no abuse of discretion in denying a new trial as against both defendants.

The judgments are affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 7, 1953.