[Civ. No. 6740.   Fourth Dist.   Mar. 23, 1962.]

ANTON L. MILICK, Plaintiff and Appellant, v. CONRAD
BAKER et al., Defendants and Respondents.

James B. Abbey for Plaintiff and Appellant.

Gray, Cary, Ames & Frye and J. Clifford Wallace for Defendants and Respondents.

SHEPARD, J.—This is an appeal from a judgment ordering removal of certain encroachments placed in a watercourse by each party and denying damages to either.

## THE CONTROVERSY

Plaintiff's complaint alleges that a certain watercourse or ravine bed lies entirely on defendant's lot; that defendant obstructed the watercourse, causing diversion of water onto plaintiff's lot to plaintiff's damage. A second count was pleaded in the form of quiet title, but defendant denied any claim to plaintiff's lot and no controversy developed with respect thereto on trial. Defendant filed a cross-complaint, alleging that said water course is partly on plaintiff's lot and partly on defendant's lot; that plaintiff obstructed said water course, diverting water onto defendant's lot to defendant's damage.

## FACTS

While there is some conflict in the evidence, it is amply sufficient to support the following statement of facts: Each party owns a lot about 150 feet square on the south side of Springfield Street near its intersection with Oriole Street in the City of San Diego. Plaintiff's lot lies immediately adjacent to and west of defendant's lot. The topographic map of the City of San Diego which is in evidence shows that the drainage area served by the ravine before it reaches the lots of the parties is comparatively small, being roughly 1,000 to 1,200 feet long by 700 or 800 feet wide. Springfield Street runs across the ravine on a raised artificial embankment underneath which the city constructed a culvert a short distance east of Oriole Street, which carries the water accumulated in the drainage area from the occasional storms that visit San Diego.

Harry G. Hom, a civil engineer employed by the City of San Diego for 13 years immediately preceding trial of this action, and who was head of the drainage design section in 1957 and 1958 when this dispute arose, testified that prior

to the time either party placed the encroachments complained of, he walked up the ravine bed across the two lots, inspecting it on an entirely different matter; that later he was approached by both parties asking his opinion regarding the dispute and thereafter he went up the ravine bed four or five times and saw the encroachments in place. He testified that the ravine, while somewhat precipitous in the area north of Springfield Street, broadened to a comparatively flat plain 40 to 50 feet wide through the two lots and that the thread of the stream was on the west side thereof; that the thread of the stream entered the lot of plaintiff about 15 feet north of the southeast corner of said lot and emerged from the south line about 10 feet west of said corner; that he gave this as his opinion to both parties prior to the commencement of this action, hoping to settle their difficulties; that after his first inspection he saw the obstructions complained of and that each obstruction had a tendency to divert water onto the other party's lot. The testimony of some witnesses conflicted and others agreed with his testimony that the thread of the natural stream crossed the corner of plaintiff's lot. The trial judge, shortly after the commencement of the trial, personally inspected the disputed portion of the ravine. The evidence showed that prior to the commencement of the action, near the point where the culvert existed under Springfield Street, defendant encroached on the stream bed with some fill protected by a piece of sheet iron in an effort to prevent the flow from said culvert cutting into his lot. Lower down, he constructed a driveway from his house to the street and put a culvert underneath it for drainage. A short distance downstream from the culvert he put more earth fill and rubble into the stream bed which had a tendency to divert the water toward plaintiff's lot. Plaintiff in turn built a concrete wall some distance north and some distance west from the southeast corner of his lot, which also obstructed the stream bed and had a tendency to force the water back onto defendant's lot.

The trial court found that the natural water course ran generally in the direction above described across the northwesterly portion of defendant's lot and crossed the dividing line of the parties to plaintiff's lot 10 feet north of the southeast corner thereof, leaving the south line of plaintiff's lot 5 feet east of the southeast corner thereof; that on the northwest portion of defendant's lot defendant had constructed a mound of dirt reinforced by sheet metal to divert water coming through the culvert under Springfield Street; that defend-

ant had obstructed the channel below the culvert in his private driveway; that plaintiff constructed a concrete block wall on the southeast corner of his lot adjacent to defendant's lot; that both the plaintiff and the defendant had thus obstructed the natural stream flow. The court ordered that the defendant remove the pile of dirt protected by sheet metal obstructing the stream bed immediately south of the culvert under Springfield Street, unless the City of San Diego abandons said culvert prior to November 15, 1960; that defendant remove the obstruction to the south of defendant's driveway culvert to a point at the south line of his lot 5 feet east of his westerly property line; that plaintiff remove the concrete block wall from the southeast corner of his lot 10 feet north and 5 feet east of said point; that both parties are enjoined from again diverting or blocking the natural water course; that damages are denied to either party.

## CONTENDED CONFUSION OF EVIDENCE

Plaintiff first complains that the entire record presents so much confusion that the whole matter ought to be ordered back for a new trial. With this we cannot agree. It is true that in many places in the testimony trial counsel failed to identify on photographs and maps the exact spot to which the witness referred, but it is clear that the court and both trial counsel did understand the point indicated by various witnesses. The full record of what actually occurred at the trial is presented. While difficult to read, it is not materially deficient. The trial judge's own visit to and observation of the premises is evidence. (*Gates* v. *McKinnon,* 18 Cal.2d 179, 182 [2] [114 P.2d 576]; *Chandler* v. *Hibberd,* 165 Cal.App.2d 39, 53 [16-17a] [332 P.2d 133].) The testimony and exhibits viewed together fully support the trial court's decision.

As was said in *Walling* v. *Kimball,* 17 Cal.2d 364, 373 [110 P.2d 58], "'It is well settled that all presumptions and intendments are in favor of supporting the judgment or order appealed from, and that an appellant has the burden of showing reversible error, and that, in the absence of such showing, the judgment or order appealed from will be affirmed. [Citation.]'"

And in *Burke* v. *Chrostowski,* 46 Cal.2d 444, 449 [3] [296 P.2d 545], "The choice of conflicting inferences to be drawn from the evidence was for the trial court to make, and its determination based on the inferences drawn will not be disturbed on appeal."

### Evidence Sufficient to Support Findings and Judgment

■ Next, plaintiff, without citation of authority, complains that the order that the encroachment in the stream bed by defendant on the northwest portion of defendant's lot be removed unless the City of San Diego abandons the use of the culvert under Springfield Street by November 15, 1960, makes the City of San Diego a necessary party. With this we do not agree.

As the statement of facts first above given indicates, the drainage area involved above the lots of the parties is comparatively small. The testimony of one of the engineer witnesses of the plaintiff indicates that there were plans then current by the City of San Diego to regrade Springfield Street, to abandon the culvert at the point in use at the time of trial and to divert the drainage water normally going through the culvert then in place to some other point. The encroachment of the stream bed by defendant at the point just south of this culvert under Springfield Street was built to prevent further cutting into defendant's lot from the flow sometimes coming through said culvert. Obviously, if said culvert were changed to another point there would be no drainage flow at this spot and no diversion from the stream bed. If drainage water is diverted improperly by city to some other point, that would present a different problem. In any event, without any drainage into the natural stream bed at the particular point here spoken of, no possible prejudice could be shown by plaintiff as this point was entirely on defendant's lot.

Plaintiff did not name the city as a party defendant. Plaintiff did not, either before or during the trial of the case, make any motion to have the city named as a party. Nothing in the pleading indicated that the city was a necessary party, and the evidence does not compel such a conclusion.

After judgment, plaintiff sought an order to excavate a trench entirely across the stream bed in an attempt to more exactly locate the natural course of the stream bed. We find nothing in the denial of this order, nor in the order denying plaintiff's motion for a new trial, to indicate any abuse of the trial court's discretion. (*Holland* v. *Kerr*, 116 Cal.App.2d 31, 38 [6] [253 P.2d 88].)

We find no prejudicial error.

Plaintiff-appellant raises no other points.

The judgment is affirmed.

Griffin, P. J., and Coughlin, J., concurred.