Opinion
KUMAR, J.

I. INTRODUCTION

On March 13, 2009, a notice to appear was issued to appellant pursuant to the automated traffic enforcement statutes (Veh. Code, §§ 21455.5-21455.7), alleging she failed to stop at a red signal light located at the intersection of Centinela Avenue and Beach Avenue in the City of Inglewood. Following a court trial wherein photographic evidence obtained from an automated traffic enforcement system (ATES) was admitted, appellant was convicted of failing to stop at a red signal light (Veh. Code, § 21453, subd. (a)).
Appellant presents the following contentions: (1) the photographs depicting the traffic violation were inadmissible because no foundation was established that the photographs were reasonable representations of what they were *Supp. 4 alleged to portray, and they constituted hearsay; (2) the yellow light interval of the traffic light did not conform to the requirements of Vehicle Code section 21455.7; (3) the prosecution’s use of photographic evidence violated appellant’s Sixth Amendment right to confront witnesses; and (4) the prosecution failed to prove appellant was the driver depicted in the photographs.
In affirming the judgment, we acknowledge the Appellate Division of the Orange County Superior Court has held that claims similar to those addressed in part III.A. warrant reversal of the judgment. (People v. Khaled (2010) 186 Cal.App.4th Supp. 1 [113 Cal.Rptr.3d 796].) Specifically, Khaled held photographs from an ATES purporting to show the defendant driving through a red light were inadmissible because the testifying officer (1) was not a percipient witness and, therefore, could not establish that the photograph was a “ ‘ “reasonable representation of that which it is alleged to portray . . .” ’ [citation]”; or (2) could not, like a person who set up a “ ‘nanny cam,’ ” establish the time the camera was set to record and the method used to retrieve the photographs. (Id. at p. Supp. 5.) In addition, Khaled held the photographs constituted inadmissible hearsay in that they were not admissible business records (Evid. Code, § 1271) or official records (Evid. Code, § 1280). (Khaled, at pp. Supp. 6-9.)
We respectfully disagree with Khaled. As explained below, it is our view that photographs taken by an ATES may be admissible even if the testifying officer was not a percipient witness to the violation and was not personally responsible for setting up the camera. We conclude the accuracy of the photographs is subject to a rebuttable presumption pursuant to Evidence Code sections 1552, subdivision (a), and 1553. Moreover, apart from such a presumption, the photographs may be authenticated by a law enforcement officer who has knowledge about the methods used by the ATES to transmit the photographs to the officer’s law enforcement agency. Finally, the data and images on the photographs did not constitute hearsay because they did not amount to a “statement” from a human declarant.[1]

II. FACTS

Only one witness testified at trial—Investigator Dean Young of the Inglewood Police Department. Investigator Young was assigned to the Traffic Division, Red Light Camera Photo Enforcement. Based on more than six years of experience in this division, as well as the knowledge he acquired from city engineers and the company that maintained the ATES, he explained the issuance of the traffic citation as set forth below.
*Supp. 5 The ATES located at the intersection of Centinela Avenue and Beach Avenue was implemented in September 2003. It is operated by the police department but maintained by Redflex Traffic Systems (Redflex).
On a monthly basis, Investigator Young visually inspects the traffic signal to ensure the duration of the yellow light interval complies with the minimum guidelines established by California’s Department of Transportation. On February 16, 2009, and March 16, 2009, he conducted timing checks of the traffic signal’s yellow light interval, which showed averages of 4.11 and 4.03 seconds respectively. These test results were “well above 3.9 as established by the Department of [Transportation] for [a 40-mile-per-hour] highway.”
The ATES is programmed to obtain three digital photographs and a 12-second video when its sensors detect a vehicle in the intersection during a red light phase: a “pre-violation photograph” showing the vehicle behind the limit line; a “post-violation photograph” showing the vehicle in the intersection; and a photograph of the vehicle’s license plate. A “data bar” containing the date, time, location, and red light interval is printed on each photograph. The ATES operates independently once triggered, and information from the system is stored on a computer at the scene and retrieved by Redflex technicians through an Internet connection.
As indicated in the data bar printed on the photographs of appellant’s violation, the signal light was in the red light phase for 0.27 seconds when the “pre-violation photograph” was taken. In the “post-violation photograph” taken 0.66 seconds later, appellant was shown in the intersection while the signal light remained in the red light phase.

III. DISCUSSION

A. Authentication and Hearsay
“We review claims of evidentiary error [for] abuse of discretion .... [Citation.]” (People v. Dixon (2007) 153 Cal.App.4th 985, 997 [63 Cal.Rptr.3d 637].) “Under [that] standard, ‘a trial court’s ruling will not be disturbed, and reversal of the judgment is not required, unless the trial court exercised its • discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.’ [Citation.]” (People v. Hovarter (2008) 44 Cal.4th 983, 1004 [81 Cal.Rptr.3d 299, 189 P.3d 300].)
1. Authenticity of a Photograph
The authenticity of a photograph is a preliminary fact that must be established by the photograph’s proponent before it may be admitted into *Supp. 6 evidence. (Evid. Code, § 1401, subd. (a) [requiring authentication of a “writing”]; People v. Beckley (2010) 185 Cal.App.4th 509, 514 [110 Cal.Rptr.3d 362] [noting that a photograph is a “writing” under the Evid. Code].)
Evidence Code sections 1552[2] and 1553[3] establish a presumption that the data from the ATES and the digital images it captured were “an accurate representation” of the information or images contained therein. Under these statutes, the burden of producing evidence casting doubt on the accuracy or reliability of the photographs fell on appellant. She provided no evidence on this point. Without any evidence of inaccuracy, the photographs were properly presumed to be accurate and authenticated.
In any event, notwithstanding the presumption of accuracy, there was sufficient evidence of authentication. “A photograph or other writing may be authenticated by ‘the introduction of evidence sufficient to sustain a finding that it is the writing that the proponent of the evidence claims it is’ (Evid. Code, § 1400) . . . .” (People v. Beckley, supra, 185 Cal.App.4th at p. 514.) Authentication does not require the person who takes a photograph to testify in order to lay a proper foundation for admission of the photograph into evidence. (Holland v. Kerr (1953) 116 Cal.App.2d 31, 37 [253 P.2d 88].) Rather, authentication of a photograph “may be provided by the aid of expert testimony . . . although there is no one qualified to authenticate it from personal observation.” (People v. Bowley (1963) 59 Cal.2d 855, 862 [31 Cal.Rptr. 471, 382 P.2d 591].)
The officer provided expert testimony regarding the operation of the ATES and the photographs it produces based on information he had from city traffic engineers and Redflex as well as his experience with images obtained from the cameras. He explained that, once the automated system’s sensors were *Supp. 7 triggered by appellant’s entry into the intersection during a red light phase, it independently recorded data (i.e., the timing of appellant’s violation) and photographs of her violation, and such digital information was then collected by Redflex employees and sent to the police department. His testimony provided the foundation necessary to demonstrate the photographs were reliable portrayals of data and images contained therein.
Thus, even apart from appellant’s failure to rebut the presumption of accuracy, the evidence sufficiently supported the trial court’s determination that the photographs were what the prosecution claimed they portrayed, namely, digital depictions of appellant entering the intersection against a red signal light.
2. The Photographs Were Not Rendered Inadmissible by the Hearsay Rule
“ ‘Hearsay evidence’ is evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated.” (Evid. Code, § 1200, subd. (a).) A “statement” in this context “ ‘means (a) oral or written verbal expression or (b) nonverbal conduct of a person intended by him as a substitute for oral or written verbal expression.’ [Citation.] ‘ “Person” includes a natural person, firm, association, organization, partnership, business trust, corporation, limited liability company, or public entity.’ [Citation.]” (People v. Hawkins (2002) 98 Cal.App.4th 1428, 1449 [121 Cal.Rptr.2d 627].) Because “[t]he Evidence Code does not contemplate that a machine can make a statement,” information generated from a machine does not fall within the bar created by the hearsay rule. {Ibid.)
The data bars affixed to the bottom of the photographs were not hearsay, insofar as they were not “inputted” by a person but, rather, were generated by the ATES once the system’s sensors were triggered by appellant. The purpose of the hearsay rule is to subject the declarant to cross-examination in order to bring to light any falsities, contradictions, or inaccuracies that may not be discernible in the declarant’s out-of-court statement. (People v. Hawkins, supra, 98 Cal.App.4th at p. 1449.) Under no scenario could appellant have cross-examined the ATES to ask what time it recorded appellant’s traffic violation. (See ibid, [noting that a machine cannot consciously misrepresent facts].) Simply put, the data bars were not a “statements” from a person that were subject to the hearsay rule.
As for the images depicted in the photographs, they were demonstrative evidence of appellant’s crime and, hence, did not render the photographs inadmissible under the hearsay rule. People v. Cooper (2007) 148 *Supp. 8 Cal.App.4th 731, 746 [56 Cal.Rptr.3d 6] [holding that photographs and video “are demonstrative evidence, depicting what the camera sees,” and “are not hearsay”].)
B.-D.*

IV. DISPOSITION

The judgment is affirmed.
McKay, P. J., and Dymant, J., concurred.

 In the unpublished portion of the opinion, we reject appellant’s remaining contentions.

 “A printed representation of computer information or a computer program is presumed to be an accurate representation of the computer information or computer program that it purports to represent. This presumption is a presumption affecting the burden of producing evidence. If a party to an action introduces evidence that a printed representation of computer information or computer program is inaccurate or unreliable, the party introducing the printed representation into evidence has the burden of proving, by a preponderance of evidence, that the printed representation is an accurate representation of the existence and content of the computer information or computer program that it purports to represent.” (Evid. Code, § 1552, subd. (a).)

 “A printed representation of images stored on a video or digital medium is presumed to be an accurate representation of the images it purports to represent. This presumption is a presumption affecting the burden of producing evidence. If a party to an action introduces evidence that a printed representation of images stored on a video or digital medium is inaccurate or unreliable, the party introducing the printed representation into evidence has the burden of proving, by a preponderance of evidence, that the printed representation is an accurate representation of the existence and content of the images that it purports to represent.” (Evid. Code, § 1553.)

See footnote, ante, page Supp. 1.